21CA0325 Peo in Interest of OLPA 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0325 City and County of Denver Juvenile Court No. 17JV1110 Honorable Pax L. Moultrie, Judge The People of the State of Colorado, Appellee, In the Interest of O.L.P.A., a Child, and Concerning M.R.A., Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE PAWAR Navarro and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Kristin M. Bronson, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee Barry Meinster, Guardian Ad Litem Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant 
1 ¶ 1 M.R.A. (father) appeals the judgment terminating the parent-
child legal relationship with O.L.P.A. (the child). We affirm. I. Background ¶ 2 The Department of Human Services of the City and County of Denver filed a petition in dependency and neglect regarding the then-four-year-old child and her half-siblings based on lack of parental supervision and an unsanitary home. The Department alleged that father was on parole and not living with the child. ¶ 3 The juvenile court adjudicated the child dependent and neglected. The court also adopted a treatment plan for father. ¶ 4 The Department later moved to terminate father’s parental rights. Almost four years after the petition was filed and following a hearing, the juvenile court granted the motion. II. Termination of Parental Rights A. General Law ¶ 5 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the 
2 parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2020; People in Interest of C.H., 166 P.3d 288, 289 (Colo. App. 2007). ¶ 6 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. “We review the juvenile court’s findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. But we review de novo the juvenile court’s legal conclusions based on those facts. See id. B. Sufficiency of the Evidence ¶ 7 Father contends that the juvenile court erred by terminating his parental rights. Specifically, he asserts that the court erred by finding that he was an unfit parent who could not become fit within a reasonable time. We discern no basis for reversal. ¶ 8 Here, the juvenile court found that father had not reasonably complied with his treatment plan; he was unfit; and his conduct or condition was unlikely to change within a reasonable time. In 
3 doing so, the court found that father had not consistently visited the child, completed a parent-child interactional assessment (PCI), or established stability. The court noted that father had moved to Texas during the case without telling the professionals involved in his case. The court found that the primary issue was that father did not have and had not built a relationship with the child. The court next found that father did not understand the importance of the child’s relationship with her half-siblings or her mental health needs. The court further found that father was “unable to offer nurturing and safe parenting adequate to meet [the child’s] needs” or show “an ability to be consistent in her life.” ¶ 9 The record supports the juvenile court’s findings. Father’s attendance at the therapeutic supervised visits with the child was inconsistent; he did not complete a PCI to learn more about his relationship with the child; and it was unclear whether he had stable housing or income. Three months before the termination hearing, the Department discovered that father had moved to Texas. Father did not tell the Department or other professionals that he was moving out of state, so there was no plan in place as to how to let the child know. 
4 ¶ 10 The record shows that father and the child had limited contact, and therefore, they did not have a strong relationship. The child’s therapist testified that the child “hasn’t had enough time with [father] to establish that rapport to feel safe to live with him.” There were times when the child did not want to engage with father during visits or attend visits. The caseworker testified that the child had reported that she wanted contact with father but she did not want to live with him. ¶ 11 The record further indicates that there were concerns that father did not understand the child’s mental health needs and her need to maintain a connection with her half-siblings. The child’s therapist and the caseworker testified that the child had a strong bond with her half-siblings and they had an “unbreakable sibling connection.” The therapist and the caseworker also testified that it would be “detrimental” to separate the child and her half-siblings. The caseworker testified that father had not acknowledged “what the sibling connection means for [the child] and her sisters.” ¶ 12 Lastly, the caseworker opined that father was unfit and would not become fit within a reasonable time. In particular, the caseworker testified that father lacked consistency, stability, and an 
5 understanding of the child’s mental health needs and sibling connection. The caseworker also testified that the case had been open for almost four years and father had a reasonable amount of time to become fit. ¶ 13 Because the record supports the juvenile court’s factual findings, we will not disturb those findings or the court’s legal conclusions on appeal. III. Less Drastic Alternatives ¶ 14 Father contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. Specifically, he argues that the court could have allocated parental responsibilities to the paternal great aunt or the foster family. We discern no basis for reversal. ¶ 15 The juvenile court must also consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. People in Interest of D.P., 181 P.3d 403, 408 (Colo. App. 2008). In considering less drastic alternatives, the court bases its decision on the best interests of the children, giving primary consideration to their physical, mental, and emotional conditions and needs. § 19-3-604(3). 
6 ¶ 16 Here, the juvenile court found that there were no less drastic alternatives to termination. The court considered the paternal great aunt but found that she had withdrawn her request for placement. The court found that the child’s relationship with her half-siblings had “been a significant stabilizing factor” and that she had moved back and forth between family members during the case. The court also found that the child needed stability and permanency that adoption could provide. ¶ 17 The record supports the juvenile court’s findings. The case had been ongoing for almost four years, and the child needed permanency. The child’s therapist testified that the child needed “to know that her everyday needs [were] going to be met.” And when, as here, the child is less than six years old when a petition in dependency and neglect is filed, the expedited permanency planning provisions apply. § 19-1-123(1)(a), C.R.S. 2020. The guidelines in effect at the time of the termination hearing required the juvenile court to place the child in a permanent home “as expeditiously as possible.” § 19-3-702(5)(c), C.R.S. 2020. At the time of the termination hearing, the child had been in several placements. The caseworker testified that the case had been open for a long time 
7 because the Department was exploring various family members and a possible allocation of parental responsibilities (APR). ¶ 18 The record also indicates that the Department and the foster family preferred adoption over an APR. The caseworker testified that the child and her half-siblings had been in a foster-to-adopt home for the past six months. According to the caseworker, the child wanted to be adopted with her half-siblings. ¶ 19 As to the paternal great aunt, the record shows that an Interstate Compact on the Placement of Children home study was initiated for her. But the home study was denied because the aunt reported that her apartment was not big enough and she did not have the financial means to care for the child and her half-siblings. ¶ 20 Because the record supports the juvenile court’s factual findings, we will not disturb those findings or the court’s legal conclusions on appeal. IV. Conclusion ¶ 21 The judgment is affirmed. JUDGE NAVARRO and JUDGE GROVE concur.